**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4429
_____

UNITED STATES OF AMERICA

v.

KEVIN WEATHERSPOON
a/k/a FIFTY
a/k/a 50

KEVIN WEATHERSPOON,
Appellant
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 3:05-cr-00176-013)
District Judge: Honorable James M. Munley
_____

Argued July 13, 2012
_____

Before: FUENTES, HARDIMAN and ROTH,
*Circuit Judges*

(Opinion Filed: October 10, 2012)

Frederick W. Ulrich, Esq. **[ARGUED]**
Office of Federal Public Defender
Suite 306
100 Chestnut Street
Harrisburg, PA 17101

James V. Wade, Esq.
Office of Federal Public Defender
Suite 306
100 Chestnut Street
Harrisburg, PA 17101


*Counsel for Defendant-Appellant Kevin Weatherspoon*

William S. Houser, Esq. **[ARGUED]**
Office of the United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

*Counsel for Appellee the United States of America*

—————————

OPINION OF THE COURT

—————————

FUENTES, *Circuit Judge*.

For the second time, Kevin Weatherspoon seeks a reduction in his sentence for conspiring to distribute and possess with intent to distribute over 50 grams of cocaine base. In October 2006, he pled guilty and was sentenced to a 120-month term of imprisonment pursuant to a binding plea agreement with the government. A few years later, the U.S. Sentencing Commission issued a retroactive amendment which reduced Weatherspoon's Guidelines range. We rejected Weatherspoon's first motion for a sentence reduction because he was sentenced pursuant to a binding plea agreement. In this motion, he argues that he is nevertheless eligible for a reduction because under the Supreme Court's recent decision in *Freeman v. United States*, 131 S. Ct. 2685 (2011), the sentence contained in his plea agreement was "based on" the Sentencing Guidelines. We disagree, and we will affirm the District Court's denial of his motion.

**I.**

In May 2005, Kevin Weatherspoon was indicted by a federal grand jury for crimes relating to the distribution and possession of cocaine, cocaine base and marijuana. In lieu of trial, Weatherspoon pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C)

plea agreement (a "(C) plea agreement").[1]  In that agreement, the parties agreed that Weatherspoon should receive a sentence of 120 months' imprisonment because that sentence was "a reasonable sentence under the facts and circumstances of the case." (Appendix ("App.") at 13-14.)

Weatherspoon's plea agreement contains only a few references to the Sentencing Guidelines.  The agreement does not expressly state what the parties believed Weatherspoon's Guidelines range would be or if they used the Guidelines to determine that a 120-month term of imprisonment was the appropriate sentence.  Nor does it provide his offense level or criminal history category.

The agreement does, however, note that "[t]he defendant . . . agrees that any legal and factual issues relating to the application of the Federal Sentencing Guidelines to the defendant's conduct, including facts that support any specific offense characteristic or other enhancement or adjustment and the appropriate sentence within the statutory maximum provided for by law, will be determined by the court at a sentencing hearing."  (App. at 12.)  The (C) plea agreement also makes certain recommendations relevant to the calculation of his offense level.  Specifically, the parties agreed that for the purposes of sentencing, the court should:

---

[1] Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

4

(1) attribute at least 500 grams but less than 1.5 kilograms of cocaine base to Weatherspoon; and (2) attribute at least 500 grams but less than 1.5 kilograms of cocaine hydrochloride to him. Weatherspoon was also to receive a three-level reduction to his offense level because of his acceptance of responsibility. There is no mention in the agreement of his use of a firearm or his role in the conspiracy. Nor did it indicate that the facts mentioned in the agreement were the only ones relevant to the calculation of his offense level. The agreement notes that his statutory maximum sentence was 20 years' imprisonment.[2]

Weatherspoon pled guilty on October 23, 2006. At his change of plea hearing, the government summarized the plea agreement. The prosecutor mentioned that Weatherspoon faced a maximum sentence of 20 years' imprisonment but did not mention what his applicable Guidelines range was. The government also noted that the parties agreed that Weatherspoon should receive a 120-month sentence, but did not indicate any basis for that determination. The prosecutor did mention that "the [g]overnment and defense have agreed to recommend a sentence in this . . . agreement that will likely be somewhat lower than the actual guideline[s] range, and that was in consideration of his appeal

---

[2] The plea agreement also contains a waiver of appeal provision. We need not consider its impact here, however, because the government failed to raise the issue and thus it is waived. *See United States v. Carrasco-De-Jesus*, 589 F.3d 22, 26 (1st Cir. 2009) ("Where, as here, the government's relinquishment of a known right relates to a waiver-of-appeal provision in a plea agreement, there is usually little reason to disregard that election.")

waiver, his timely guilty plea, et cetera." (App. at 49-50.) After explaining Weatherspoon's rights to him, the District Court accepted Weatherspoon's guilty plea.

For sentencing, the Probation Department prepared a pre-sentence report. Using the 2006 edition of the Guidelines manual, the Probation Officer, accepting the factual recommendations in the plea agreement, calculated Weatherspoon's base offense level as 36. She then added two additional points for Weatherspoon's possession of a firearm in furtherance of a drug offense under U.S.S.G. § 2D1.1(b)(1), and three additional points for Weatherspoon's role as a supervisor in the organization, under U.S.S.G. § 3B1.1(b). Finally, she subtracted three points for Weatherspoon's acceptance of responsibility, under U.S.S.G. § 3E1.1(a), (b). Ultimately, the Probation Officer determined that Weatherspoon had a total offense level of 38. Because this was Weatherspoon's first offense, his criminal history category was I, corresponding to a Guidelines range of 235 to 293 months. Due to the statutory maximum of 20 years, however, the top of his Guidelines range was reduced to 240 months.

The District Court sentenced Weatherspoon on February 15, 2007. At sentencing, the District Court did not explicitly calculate or adopt a particular Guidelines range. Rather, after brief argument, it accepted the recommended sentence of 120 months. It explained that in accepting that sentence, it took "into consideration the presentence investigation report, the statements by [Weatherspoon's] lawyer and the seriousness of the charges." (App. at 68.) The District Court also considered the applicable § 3553(a) factors, particularly the "kinds of sentences that are available,

6

and the advisory sentencing range and policies prescribed by the United States Sentencing Commission." (App. at 68-69.)

On November 1, 2007, nine months after Weatherspoon's sentencing, the Sentencing Commission passed Amendment 706 to the Guidelines, which reduced the cocaine base equivalency. In March 2008, the amendment was made retroactive. The amendment effectively reduced Weatherspoon's total offense level from 38 to 36, resulting in a reduction of his Guidelines range from 235–240 months to 188–235 months.

Shortly after, Weatherspoon filed his first motion for a reduction in his sentence under 18 U.S.C. § 3582(c)(2), which allows a court to reduce a defendant's sentence retroactively based on a change in the Guidelines. Weatherspoon contended that since his 120-month sentence represented a 49% reduction from the bottom of his then-Guidelines range, his sentence should be proportionately reduced to 96 months based on his new Guidelines range. The District Court denied that motion, finding that his sentence was still "comparably less than the amended guideline range." (App. at 92.)

Weatherspoon appealed to this Court. We held that Weatherspoon was ineligible for a reduction because of his binding plea agreement. *United States v. Weatherspoon*, 338 F. App'x 143, 143 (3d Cir. 2009) (citing *United States v. Sanchez*, 562 F.3d 275, 282 (3d Cir. 2009)).[3] The Supreme

---

[3] In *Sanchez*, we held that a defendant who pleads guilty pursuant to a (C) plea agreement receives a sentence that is "based on" the agreement and that such defendants are never eligible for 3582(c)(2) relief. 562 F.3d at 279-82.

Court denied Weatherspoon's petition for certiorari on November 30, 2009. *Weatherspoon v. United States*, 130 S. Ct. 768 (2009).

Two years later, the United States Supreme Court issued its ruling in *Freeman v. United States*, --- U.S. --- , 131 S. Ct. 2685 (2011). A plurality of the Court held that defendants who pled guilty to (C) plea agreements are eligible for relief under § 3582(c)(2) whenever the district court uses the Guidelines as a basis for accepting the agreement. *Id.* at 2695. Justice Sotomayor concurred, finding that these defendants are only eligible when their plea agreements make clear that the parties used the Guidelines as a foundation for the term of imprisonment set forth in the agreement. *Id.* at 2697-98. Thus, five members of the Supreme Court concluded that defendants who pled guilty pursuant to (C) plea agreements could be eligible for relief, overruling our prior decision in *Sanchez*.

Based on this change in the law, Weatherspoon filed a second motion for a reduction in his sentence. The District Court denied that motion without reasoning and Weatherspoon filed a timely notice of appeal.

## II.

When the district court determines that a defendant is ineligible for relief under 18 U.S.C. § 3582(c)(2), our review is plenary. *United States v. Sanchez*, 562 F.3d 275, 277 (3d Cir. 2009), *overruled on other grounds*, *Freeman*, 131 S. Ct. at 2685; *see also United States v. Lawson*, --- F.3d ---, 2012 WL 2866265, at *1 (11th Cir. July 13, 2012). By contrast, when the district court determines that a defendant is eligible

for relief but declines to reduce his sentence, our review is for an abuse of discretion. *Sanchez*, 562 F.3d at 278 n.4; *see also United States v. Austin*, 676 F.3d 924, 926-27 (9th Cir. 2012).

A district court's authority to alter or amend a defendant's sentence is limited. Under the Sentencing Reform Act of 1984, a district court loses any continuing authority over a sentence once it has been imposed, *see* 18 U.S.C. § 3582(c), subject to two general exceptions. First, though not relevant here, a district court has the power to correct clerical or technical errors within 14 days of the entry of judgment. 18 U.S.C. § 3582(c)(1)(B); Fed R. Crim. P. 35(a). Second, a district court has the power to amend a sentence, provided that it was based on a Guidelines range that has since been lowered. 18 U.S.C. § 3582(c)(2). Under § 3582(c)(2)

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

9

We must determine, as a threshold matter, whether Weatherspoon was eligible for relief under the statute. Our review of this question is plenary.

**A.**

On appeal, the government asserts for the first time that § 3582(c)(2) only permits a defendant to file one motion for a sentence reduction and that the District Court thus lacked jurisdiction to consider Weatherspoon's second motion. *See* Appellee's Br. at 23. In the alternative, and also for the first time, the government argues that the Law of the Case Doctrine precludes review. *See* Appellee's Br. at 24. Though we ordinarily consider issues not raised before the district court to be waived, *see Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991), we have an independent duty to assure ourselves that we and the district court have jurisdiction. *Farina v. Nokia, Inc.*, 625 F.3d 97, 109-110 (3d Cir. 2010). Thus, we will consider this argument only insofar as it implicates a district court's jurisdiction to adjudicate multiple § 3582(c)(2) motions.

In a recent line of cases the Supreme Court has cautioned that federal courts should be reluctant to classify a statutory requirement as jurisdictional. *See Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 466 (3d Cir. 2011) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510, 511 (2006)). Indeed, as only Congress may define a court's subject-matter jurisdiction, "limits on the reach of federal statutes, even nontemporal ones, are only jurisdictional if Congress says so: when Congress does not rank a statutory limitation . . . as jurisdictional, courts should treat the

10

restriction as nonjurisdictional in character." *Bowles v. Russell*, 127 S. Ct. 2360, 2368 (2007) (quoting *Arbaugh*, 546 U.S. at 516) (quotation marks omitted).

Several of our sister circuits have held that § 3582(c)(2) does not permit a district court to reconsider its prior ruling on a § 3582(c)(2) motion. *See United States v. Randall,* 666 F.3d 1238, 1242-43 (10th Cir. 2011); *United States v. Redd*, 630 F.3d 649, 651 (7th Cir. 2011); *United States v. Goodwyn*, 596 F.3d 233, 236 (4th Cir. 2010); *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). Some of these courts have done so because, while Congress did not specifically forbid successive motions, it did not specifically authorize them either. *See Redd*, 630 F.3d at 651; *Goodwyn*, 596 F.3d at 236.

Though our sister courts may be right that such silence, when read in light of the statute's purpose of restricting a district court's authority to revisit a criminal sentence, means that a defendant is only entitled to one bite at the apple, it does not follow that this restriction goes to the subject matter jurisdiction of the district court. After all, a rule derived from congressional silence does not support an inference that Congress has "clearly stated" its intent to limit a district court's jurisdiction to one § 3582(c)(2) motion. *See Bowles*, 127 S. Ct. at 2368; *Animal Sci. Prods., Inc.*, 654 F.3d at 468 (applying the *Arbaugh* "clearly states" test). Thus any restriction on the filing of successive § 3582(c)(2) motions is not a limitation on the district court's subject matter jurisdiction.

Having assured ourselves that the District Court had subject matter jurisdiction to consider Weatherspoon's second

11

§ 3582(c)(2) motion, we will not further consider the government's arguments that Weatherspoon was barred from filing a second § 3582(c)(2) motion based on the same Guidelines amendment. The government did not raise these arguments before the District Court and therefore they are waived. *Brenner*, 927 F.2d at 1298.

## B.

Our jurisdictional inquiry is not at an end, however. A district court only has the authority to consider whether a defendant should receive a reduction in his sentence under § 3582(c)(2) when the defendant has been: (1) sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission; and when such a reduction is (2) consistent with the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(2); *United States v. Doe*, 564 F.3d 305, 309 (3d Cir. 2009). Here, it is undisputed that Amendment 706 retroactively lowered Weatherspoon's Guidelines range and that reducing his sentence would be consistent with the Guidelines' policy statements. Thus, the only issue before us is whether Weatherspoon's 120-month sentence was "based on" his Guidelines range.

Our resolution of this issue is controlled by the framework established by Justice Sotomayor's concurrence in *Freeman v. United States*. *See United States v. Thompson*, 682 F.3d 285, 289 (3d Cir. 2012) (determining that Justice Sotomayor's concurrence is the narrowest opinion and thus controls). In *Freeman*, the Court considered what a defendant's sentence was "based on" for purposes of 18

12

U.S.C. § 3582(c)(2) when that defendant pled guilty pursuant to a (C) plea agreement.

To Justice Sotomayor, the sentence such a defendant receives is "based on" the agreement itself, not on the district court's analysis or application of the sentencing Guidelines. *Freeman*, 131 S. Ct. at 2695. This is so because, at the time of sentencing, "[t]he court may only accept or reject the agreement, and if it chooses to accept it, at sentencing the court may only impose the term of imprisonment the agreement calls for." *Id.* Thus, any determination of whether a defendant's sentence is "based on" the Guidelines turns solely on an examination of the four corners of the plea agreement. *Id.* at 2698 n.2 ("[T]o determine whether a sentence imposed pursuant to a (C) plea agreement was 'based on' a Guidelines sentencing range, the reviewing court must necessarily look to the agreement itself."); *United States v. Dixon*, --- F.3d ---, 2012 WL 2913732, at *3 (7th Cir. July 18, 2012) ("Under Justice Sotomayor's approach, a prisoner sentenced under a binding plea agreement is eligible for § 3582(c)(2) relief only if the binding plea agreement itself expressly refers to and relies on a guideline sentencing range."). Any statements made by the District Court, the probation department, or counsel are irrelevant to this analysis.

Justice Sotomayor identified only two situations in which a defendant sentenced pursuant to a (C) plea agreement could be eligible for a sentence reduction. *Freeman*, 131 S. Ct. at 2697-700; *Dixon*, 2012 WL 2913732, at *2. First, when the defendant's agreement "call[s] for the defendant to be sentenced within a particular Guideline[s] sentencing range," "there can be no doubt that the term of imprisonment

13

the court imposes is 'based on' the agreed-upon sentencing range." *Freeman*, 131 S. Ct. at 2697. Second, when the defendant's agreement "provide[s] for a specific term of imprisonment—such as a number of months" the sentence is "based on" a Guidelines range when the agreement "make[s] clear" that the foundation for the agreed-upon sentence was the Guidelines. *Id.* In other words:

> [a]s long as that sentencing range is *evident from* the agreement itself, for purposes of § 3582(c)(2) the term of imprisonment imposed by the court in accordance with that agreement is "based on" that range. Therefore, when a (C) agreement *expressly uses* a Guidelines sentencing range to establish the term of imprisonment, and that range is subsequently lowered by the Commission, the defendant is eligible for sentence reduction under § 3582(c)(2).

*Id.* at 2697-98 (emphasis added).

Thus, to be eligible for relief under 18 U.S.C. § 3582(c)(2), a defendant who agrees to a specific term of imprisonment in a (C) plea agreement must show that his agreement both identifies a Guidelines range and demonstrates a sufficient link between that range and the recommended sentence. *See id.*; *Dixon*, 2012 WL 2913732, at \*3. Failure to meet either requirement is fatal to a defendant's § 3582(c)(2) motion.

Applying this framework, Justice Sotomayor concluded that William Freeman fell into the second category

14

of defendants and was eligible for relief. Freeman agreed to plead guilty to multiple cocaine base possession and distribution charges pursuant to a (C) plea agreement that specified that a 106-month sentence was appropriate. The agreement stated that "[b]oth parties have independently reviewed the Sentencing Guidelines applicable in this case and that Freeman agree[d] to have his sentence determined pursuant to the Sentencing Guidelines." *Id.* at 2691 (internal quotation marks omitted). It also stated that his offense level was 19, "as determined by the quantity of drugs and his acceptance of responsibility," and that the parties anticipated that Freeman would be assigned a criminal history category of IV. *Id.* at 2699.

Because the agreement provided her with enough information to do so, Justice Sotomayor turned to the sentencing table in the Guidelines and determined that with an offense level of 19 and a criminal history category of IV, Freeman's Guidelines range was 46 to 57 months. She then compared this range to the agreed-upon 106-month sentence. Accounting for the 60-month mandatory minimum he faced on one of his other charges, Freeman was left with 46 months, exactly the bottom end of his Guidelines range. Nothing in the agreement stated that the parties agreed to 46 months because it was the bottom of his Guidelines range. However, because the figures corresponded exactly, "it [was] evident that Freeman's agreement employed the 46-month figure at the bottom end of this sentence range, in combination with the 60-month mandatory minimum," and that his sentence was "based on" the Guidelines under § 3582(c)(2). *Id.* at 2700.

Justice Sotomayor also addressed Freeman's eligibility had he received a 53-month term of imprisonment, a sentence that did not precisely conform to one end of his Guidelines range. *See id.* at 2700 n.9. The analysis, she concluded, would remain the same: "If the agreement itself made clear that the parties arrived at the 53-month term of imprisonment by determining the sentencing range applicable to Freeman's offense and then halving the 106-month figure at its low end, he would have been eligible under § 3582(c)(2)." *Id.* (citing *United States v. Franklin*, 600 F.3d 893, 897 (7th Cir. 2010)). She also noted that "if a (C) [plea] agreement does not contain any references to the Guidelines, . . . there is no way of knowing whether the agreement used a Guidelines sentencing range to establish the term of imprisonment." *Id.* (internal quotation marks and citation omitted).

## C.

In this case, the parties agreed in the (C) plea agreement that Weatherspoon should receive a fixed sentence of 120 months' imprisonment. Thus, Weatherspoon falls into Justice Sotomayor's second category — where the defendant's agreement calls for a specific term of imprisonment. Confining our analysis solely to the four corners of the plea agreement, we conclude that the agreement does not "make clear" that the foundation of his sentence was the Guidelines, because the agreement does not in any way identify or rely on Weatherspoon's Guidelines range. In fact, the agreement is silent as to his range. Nowhere in the agreement does it explicitly state the range the parties relied upon in determining his sentence. Nor does the agreement provide the necessary ingredients to calculate it. The Guidelines range can only be derived from a

16

determination of a defendant's criminal history category and his offense level. Here, we are missing at least one-half of the equation. There are simply no statements or assertions of fact in the agreement that allow us to determine Weatherspoon's criminal history category.

Because his agreement does not explicitly state his Guidelines range, or his offense level and criminal history category, and because Weatherspoon cannot otherwise demonstrate that his criminal history category is "evident from the agreement itself," we cannot conclude that the agreement identifies a Guidelines range. Thus, his claim fails under *Freeman* and his motion was properly denied. *See United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012).

Our approach finds support in the recent decisions of our sister circuits. In *United States v. Rivera-Martínez*, 665 F.3d 344 (1st Cir. 2011), the First Circuit held that the defendant was not entitled to a reduction in his sentence under § 3582(c)(2). The defendant had pled guilty pursuant to a (C) plea agreement that "stipulated that the defendant was accountable for over 1.5 kilograms of cocaine base." *Id.* at 345. After walking through adjustments to the Guidelines, the agreement specified that the defendant faced a total offense level of 37 but failed to mention anything about the defendant's criminal history category or his Guidelines range. *Id.* at 346. The court held that the defendant was ineligible for relief because, without an identified criminal history category or range, "[t]the integers needed to trigger the exception carved out by Justice Sotomayor [were] not present." *Id.* at 349. The Ninth Circuit came to a similar conclusion in *United States v. Austin*, 676 F.3d 924 (9th Cir. 2012). It found § 3582(c)(2) relief unavailable to [the

17

defendant] because, even though the agreement noted his offense level, the "plea agreement d[id] not contain any information about [the defendant's] criminal history category." 676 F.3d at 930. "Without this information, Justice Sotomayor's sentence calculation exercise in *Freeman* . . . [was] impossible." *Id.* at 929. Thus, § 3582(c)(2) relief was unavailable. *Id.*

Indeed, ours is a clearer case than those before either the Ninth or First Circuits. In both of those cases the agreements explicitly stated the defendants' total offense level but failed to mention their criminal history category. *Austin*, F.3d at 928; *Rivera- Martínez*, 665 F.3d at 346. We lack even that information, as Weatherspoon's agreement makes no mention of his offense level. Determining his Guidelines range from his plea agreement thus requires a particularly high degree of speculation, which runs contrary to the requirement that the Guidelines range must be clear from the agreement's face. As such, his sentence was not "based on" the Guidelines and the District Court lacked jurisdiction to reduce his sentence under 18 U.S.C. § 3582(c)(2).

## IV.

The District Court's denial of Weatherspoon's motion for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2) will be affirmed.